People v Reyes (2025 NY Slip Op 50772(U))

[*1]

People v Reyes

2025 NY Slip Op 50772(U)

Decided on May 16, 2025

Criminal Court Of The City Of New York, Bronx County

Moore, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on May 16, 2025
Criminal Court of the City of New York, Bronx County

The People of the State of New York,

against
Andy DeJesus Reyes, Defendant.

Docket No. CR-028165-24BX

For the Defendant: The Legal Aid Society (by: Abigail Kasdin, Esq.)
For the People: Darcel D. Clark, District Attorney, Bronx County (by: ADA Kali King)

Deidra R. Moore, J.

On November 16, 2024, Mr. Andy DeJesus Reyes (hereinafter referred to as "the Defendant"), was arrested and charged with Vehicle and Traffic Law ("V.T.L.") § 511[1][a] and related charges. The Defendant was given a Desk Appearance Ticket and released. On December 6, 2024, the Defendant was arraigned, in Bronx Criminal Court, on charges of V.T.L. § 511[1][a], Aggravated Unlicensed Driving, an unclassified misdemeanor, and V.T.L. § 509[1], Unlicensed Driving, a traffic infraction.
Defendant moves for dismissal of the accusatory instrument pursuant to Criminal Procedure Law ("C.P.L.") §§ 30.30.[1][c] and 170.30[1][e]. Defendant contends that the statutory speedy trial period has elapsed because the People did not comply with their discovery obligations pursuant to C.P.L. §§ 245.20[1] and 245.50[1].
Upon review and consideration of the submissions, court file and relevant legal authority, the Court finds that the prosecution did not validly declare its readiness for trial within the statutorily allowed sixty-day speedy trial period. Therefore, Defendant's motion is GRANTED.
 RELEVANT PROCEDURAL BACKGROUND
On December 6, 2024, the Defendant was arraigned on a misdemeanor information with a top count of V.T.L. §511[1][a], Aggravated Unlicensed Driving, an unclassified misdemeanor. The case was adjourned to February 25, 2025, for discovery compliance. On January 14, 2025, the prosecution filed and served, off-calendar, a certificate of compliance ("COC") and statement of readiness ("SOR").
On January 24, 2025, defense counsel e-mailed the assigned prosecutor, outlining a list of discovery items that were either outstanding or outdated. The prosecutor responded the same day, asserting that all discoverable items had been disclosed. On February 25, 2025, the parties appeared in court, at which time defense counsel renewed her discovery objections and challenged the validity of the prosecution's certificate of compliance. A motion schedule was set.
On March 10, 2025, Defendant moved to strike the COC and demanded dismissal of the accusatory instrument pursuant to C.P.L. §§ 245.50[4][c], 170.30[1][e], and 30.30, as the [*2]prosecution was not ready for trial within sixty days. The People filed their opposition on April 8, 2025; the defense reply followed on April 17, 2025.
While the instant motion was pending, the prosecution disclosed additional material and filed a supplemental certificate of compliance ("SCOC") and statement of readiness on March 31, 2025.

LEGAL FRAMEWORK
C.P.L. §30.30[1][c] establishes a sixty-day time limit for the prosecution to answer ready for trial when the most serious charge is a misdemeanor punishable by no more than three months' imprisonment.
Computation for speedy trial purposes begins with the day after the commencement of the criminal action (People v Stiles, 70 NY2d 765 [1987]. The speedy trial clock is tolled when the People file and serve a valid certificate of compliance and statement of readiness, affirming that they have complied with their discovery obligations and are ready for trial (C.P.L. §§ 30.30[5], 245.50[1] and 245.50[3]).
The prosecution must disclose to the defense "all items and information that relate to the subject matter of the case and are in the possession, custody or control of the prosecution or persons under the prosecution's direction or control" (C.P.L.§ 245.20[1]). Discoverable items in the custody or control of "any New York state or local police or law enforcement agency" are "deemed to be in the possession of the prosecution" (C.P.L. § 245.20[2]). C.P.L. § 245.20[1][k][iv] specifically requires disclosure of "[a]ll evidence and information . . . that tends to. . .impeach the credibility of a testifying prosecution witness." The prosecution must provide all discoverable material to the defense except that which has been lost or destroyed (C.P.L. § 245.80) or is the subject of a protective order (C.P.L. § 245.70[1]).
The prosecution's duties do not end, however, with disclosing discoverable items in its actual or constructive possession. The prosecution must also "make a diligent, good faith effort to ascertain the existence of" and disclose discoverable material outside its possession, although the prosecution is not required to obtain by subpoena duces tecum discoverable items that the defense may obtain in this manner (C.P.L. § 245.20[2]).
When the People have turned over all materials subject to discovery, they must file with the court and serve on the defense a certificate of compliance, certifying that they have exercised due diligence and made reasonable inquiries to fulfill their discovery obligations (C.P.L. § 245.50[1]. Absent "an individualized finding of special circumstances," the People may not validly state ready for trial until they have provided all discoverable material to the defense and filed a proper COC (C.P.L. § 245.50[3]).
The Defense is required to alert the prosecution to any missing or incomplete discovery "as soon as practicable" (C.P.L. § 245.50[4][b]). This statutory provision is meant to discourage the defense from "lying in wait" to notify the prosecution of missing discovery only once the statutory speedy trial period has elapsed (People v Morales, 227 NYS.3d 909, 912 [Crim Ct, NY County 2025]).
When the defense disputes the validity of a certificate of compliance, the burden is on the prosecution to show "that they did, in fact, exercise due diligence and [make] reasonable inquiries prior to filing the initial COC" (People v Bay, 41 NY3d 200, 213 [2023]). Due diligence is evaluated using several factors, including the complexity of the case, the volume of discovery provided, and how the People responded to notice of missing items (Id. at 212).

DISCUSSION
[*3]I. The Parties' Arguments
The Defense argues that the prosecution's initial COC filed on January 14, 2025, was invalid because certain discoverable items were not disclosed prior to its filing. Consequently, the accompanying statement of readiness was illusory, and the speedy trial clock was not tolled.
The most substantive outstanding material flagged by Defendant comprises impeachment material for testifying officers.[FN1]
Defendant notes that the prosecution shared some impeachment material for two officers, PO Alexander Heald and PO Bilal Malik. However, the defense contends that the prosecution furnished an outdated and incomplete Civilian Complaint Review Board ("CCRB") report for PO Heald, and no CCRB report for PO Malik. The defense points out that PO Heald's CCRB history report bore a 2023 date, and indicated an investigation for misconduct opened mid-2023, with no additional documentation regarding the investigation.
Further, the defense contends that the prosecution improperly redacted two Internal Affairs Bureau ("IAB") logs detailing two complaints against PO Heald, one found to be unsubstantiated and one that remains open, and that the prosecution did not include the contents of the attachments to those logs, which may contain material that tends to impeach the officer's credibility.
The People contend that their initial certificate of compliance and statement of readiness were valid, as they exercised due diligence to comply with their discovery obligations and responded expeditiously to defense counsel's subsequent discovery objections. The prosecution asserts that the furnished 2023 CCRB report for PO Heald was the most current such report in its possession on January 14, 2025, when the initial COC was filed. Moreover, the People affirm that they possessed no discoverable CCRB or IAB materials for PO Malik at the time of the COC's filing.
Regarding the IAB logs furnished for PO Heald, the prosecution argues that the attachments and redacted portions are not discoverable. The prosecution maintains that, to be discoverable, impeachment matter must "relate to the subject matter of the case," and that the attachments and redacted portions of PO Heald's IAB logs do not meet this criterion.
II. The Court's Analysis
Effective January 1, 2020, the New York State Legislature enacted C.P.L. Article 245, a complete overhaul of discovery practice in criminal cases. Article 245 requires automatic disclosure to defense counsel of "all subject matter and information which relates to the subject matter of the case," as well as "[a]ll evidence and information . . . that tends to. . .impeach the credibility of a testifying prosecution witness" (C.P.L. §§ 245.20[1] and 245.20[1][k][iv]). Moreover, Article 245 explicitly instructs those interpreting it to err on the side of disclosure, [*4]stating that "[t]here shall be a presumption in favor of disclosure when interpreting . . . subdivision one of section 245.20, of this article" (C.P.L. § 245.20[7]).
Shortly after C.P.L. Article 245 was enacted, the New York State Legislature repealed Civil Rights Law § 50-a, which shielded the disciplinary records of law enforcement officers from public view (People v Kelly, 71 Misc 3d 1202(A) [Crim Ct, NY County 2021]). As a result, the prosecution must now disclose disciplinary records for testifying officers, when those records may tend to impeach the officers' credibility (Matter of Jayson C., 200 AD3d 447 [2021]). Such records may include internal disciplinary records generated by the NYPD Internal Affairs Bureau ("IAB"), which are deemed to be in the prosecution's possession. Discoverable impeachment records may also include records generated by the Civilian Complaint Review Board ("CCRB"), an independent city oversight agency, when those records are in the actual possession of the District Attorney's Office.
IAB Attachments
The People recognize that they must disclose IAB documentation for substantiated and unsubstantiated complaints (People's Affirmation at 23; see also People v Lithgow, 224 NYS3d 878, 884 [Crim Ct, NY County 2024]). However, the prosecution maintains that IAB log attachments are not discoverable, as "underlying disciplinary records [are] not subject to automatic discovery where they do not relate to the subject matter of the case" (People's Affirmation at 22). The People express a confusing stance regarding the boundaries of the "subject matter of the case," as it is unclear if they interpret the phrase to exclude impeachment evidence collected from prior disciplinary investigations (Id. at 21-23).
This Court finds that discoverable impeachment material extends beyond evidence stemming directly from the current case. The Court's interpretation is supported by Article 245's emphasis on broad disclosure, as well as the plain language of C.P.L. § 245.20[1][k][iv], which requires disclosure of "all evidence and information" that tends to impeach a witness's credibility. (See People v Coley, — NYS3d —, 2025 NY Slip Op. 01945 [2nd Dept 2025] ["records that may tend to impeach the credibility of a testifying prosecution witness are related to the subject matter of the case and must be disclosed as part of automatic discovery"]; see also People v Edwards, 74 Misc 3d 433, 440 [Crim Ct, NY County 2021] ["[s]ince impeachment evidence is relevant to whether the factfinder in the case should believe the witness, that evidence necessarily relates to the 'subject matter of the case"].)
The Court further concludes that the IAB log attachments at issue must be disclosed. The attachments, which contain exhibits and documents related to misconduct investigations, may possess essential impeachment material and should therefore be disclosed as part of the prosecution's automatic discovery requirements (People v Silva-Torres, 81 Misc 3d 1121, 1128 [Crim Ct, NY County 2023]). The Court cannot speak more specifically to the impeachment value of the log attachments here, as it has not had the opportunity to review them. Moreover, the People's affirmation does not demonstrate a review of the attachments' contents, such that the Court can conclude that they contain no impeachment material.
If the People intend to redact or withhold such IAB attachments from discovery, they must first file a motion for a protective order, pursuant to C.P.L. § 245.70[1]. Such a motion should include a detailed explanation regarding the reason for the proposed redaction or non-disclosure. The court will then perform an in-camera assessment to establish the appropriate parameters of disclosure. Until such an order is sought, the default position under C.P.L. Article 245 is complete disclosure of IAB log attachments in substantiated and unsubstantiated [*5]allegations.
With regard, however, to the redacted portions of the IAB logs, the Court finds that, where these portions contain only the personal information of a misconduct complainant or civilian witness, this personal identifying information, on its own, does not tend to impeach a testifying officer's credibility and is therefore not automatically discoverable.
CCRB Material
As the Civilian Complaint Review Board is an independent agency, only CCRB material in the prosecution's actual possession must be turned over (People v Soto, 72 Misc 3d 1153, 1161 [Crim Ct, NY County 2021]). Article 245 does not require the prosecution to obtain CCRB records via subpoena duces tecum and disclose them to the defense (Id.). However, where records of substantiated and unsubstantiated complaints are in the prosecution's actual possession, these records must be disclosed to the defense, as "the underlying facts of substantiated and unsubstantiated findings may provide a good faith basis for cross-examination" (People v Castellanos, 72 Misc 3d 371, 374, [Sup Ct, Bronx County 2021]).
Prior to filing the initial COC on January 14, 2025, the prosecution disclosed an "Officer History" for PO Heald dated October 13, 2023, which contained allegations of force and discourtesy reported on May 6, 2023. On January 24, 2025, ten days after the initial COC was filed—and still within the People's sixty-day speedy trial period—defense counsel e-mailed the prosecution requesting updated CCRB material for both officers. Defense counsel maintains that, as the CCRB shares quarterly Officer History reports with the District Attorney's Office, the October 2023 report would not have been the latest version in the People's hands when the COC was filed (Defense Reply at 4). Defense also asserts that the prosecution failed to meet its C.P.L. § 245.20[2] responsibility to find and obtain discoverable material beyond what was already possessed by the People.
The People state that they requested impeachment material from the Bronx District Attorney's "Giglio Unit" on December 13, 2024, and received the October 2023 Officer History for PO Heald in response. The People note that they replied quickly to defense counsel's request for updated CCRB material, by reaffirming that the October 2023 report was the most current version in its possession.
On March 10, 2025, after receiving the defense motion to contest the COC, the prosecution again contacted the Bronx D.A.'s Giglio Unit, requesting updated impeachment material for both officers. In response, the prosecution received a newer Officer History for PO Heald, dated January 14, 2025, with a worksheet detailing the May 2023 allegations. The worksheet indicates that one of the allegations was found to be substantiated almost six months prior to the filing of the initial COC (People's Exhibit 6[a]). The prosecution also received an Officer History report for PO Malik, containing two open allegations which predate the filing of the initial COC (Id.). The prosecution shared these items with the defense and filed a supplemental certificate of compliance ("SCOC") on March 31, 2025.
The Court finds that the prosecution does not provide the details necessary to establish that it acted with due diligence and made reasonable inquiries regarding the outdated and incomplete CCRB material. The People do not recount any attempts to verify whether newer CCRB material was in its possession when the initial COC was filed. The prosecution does not offer any information as to the frequency with which the CCRB shares material with the Bronx D.A.'s Office. Moreover, the prosecution fails to explain the 15-month time difference between the two Officer History reports for PO Heald. Finally, the prosecution does not indicate when the [*6]District Attorney's Office received the January 14, 2025, Officer History reports.
The People responded quickly to defense counsel's January 24, 2025, discovery request, stating that they had already shared the most recent CCRB material in their possession. However, the record shows no investigation to verify this claim until Defendant filed the instant motion (People's Exhibit 4; People's Affirmation at 14). As the prosecution did not request any updated material from the Bronx D.A.'s Giglio Unit between December 13, 2024, and March 10, 2025, it remains uncertain if the updated CCRB reports were possessed by the prosecution at either the time the initial COC was filed, or at the time defense counsel made her initial request. Consequently, the Court cannot find that the People met their burden to establish that they acted with due diligence to disclose all discoverable CCRB material in their possession.
The Bay Factors
When the defendant challenges the validity of a certificate of compliance, the burden is on the People to establish that they exercised due diligence and made reasonable inquiries to comply with their discovery obligations prior to filing the COC (People v Bay, 41 NY3d 200, 213 [2023]). In People v Bay, the Court of Appeals enumerated multiple factors to consider when assessing the prosecution's diligence, including: the prosecution's efforts to comply with their discovery obligations; the volume of discovery provided, and the amount of discovery outstanding; the complexity of the case; how obvious missing discovery would be to a prosecutor exercising due diligence; any explanations for the discovery lapse; and the prosecution's response when apprised of missing discovery (Id. at 212). Discovery compliance does not require a "perfect prosecutor," nor does it engender a rule of "strict liability" requiring the dismissal of a case whenever an item is belatedly disclosed (Id.). Instead, discovery compliance should be examined holistically, using the Bay factors.
Here, an analysis of the factors enumerated in Bay weighs in favor of a finding that the initial COC, filed January 14, 2025, was invalid. As to the first factor—the prosecution's efforts to comply with their discovery obligations—the Court finds that this factor weighs in favor of the prosecution. The prosecution details substantive efforts to comply with their discovery obligations. The prosecution "conferred with the New York City Police Department, the precinct discovery liaison, the officers on the case, the District Attorney's Giglio Unit, and Defense" to obtain and disclose discoverable items (People's Affirmation at 14).
However, the Court finds that the bulk of the remaining factors—in particular, the complexity of the case, the amount of discovery served and the amount outstanding, the explanation for any discovery lapse, and the prosecution's response when apprised of missing discovery—weigh in favor of the Defendant. As a prosecution for Aggravated Unlicensed Driving, an unclassified misdemeanor, this is not a complex case requiring follow-up investigation beyond the initial traffic stop. Moreover, the discovery shared with defense was not voluminous. The People affirm that they disclosed over forty documents and seven video files of body worn camera footage (People's Exhibit 2). By criminal case discovery standards, however, the amount of discovery furnished here is relatively minimal, and consists primarily of documents routinely generated by the NYPD in every investigation. The relatively minimal amount of discovery in the case makes the belatedly disclosed CCRB Officer Histories and underlying documentation, as well as the undisclosed IAB log attachments, a more substantial portion of discovery than these items might otherwise be. As noted above, the Court lacks a clear explanation for the belatedly disclosed CCRB Officer Histories and underlying documentation.
While the Court acknowledges that the People responded expeditiously to Defendant's [*7]request for updated CCRB materials, they did not make any substantive efforts to ensure disclosure of these materials until after defense counsel filed the motion to dismiss at issue here.[FN2]

Ultimately, the Court finds that the People have not met their burden to establish that they acted with due diligence and made reasonable inquiries to comply with their discovery obligations. The People did not provide sufficient information about their efforts to ensure disclosure of complete and up-to-date CCRB material in their possession. Additionally, the People must disclose all IAB records, including attachments, for substantiated and unsubstantiated allegations, as these attachments contain impeachment material which must be disclosed pursuant to C.P.L. § 245.20[1][k][iv]. Again, if the prosecution intends to withhold these records, or portions thereof, the proper course of action is to file a motion for a protective order pursuant to C.P.L. § 245.70[1]. Finally, the Court finds that an analysis of the Bay factors supports a finding that the initial COC was invalid.

THE CPL § 30.30 CALCULATION
The speedy-trial clock commenced on December 7, 2024, the day following Defendant's arraignment (People v Stiles, 70 NY2d 765 [1987]. At arraignment, the misdemeanor complaint was converted to an information and the case was adjourned to February 25, 2025, for discovery compliance. The prosecution filed and served its initial certificate of compliance and statement of readiness on January 14, 2025. However, as discussed above, the prosecution has not established that it acted with due diligence and made reasonable inquiries prior to this filing. Consequently, the speedy trial clock was not tolled until the motion schedule was set on February 25, 2025 (December 7, 2024 — February 25, 2025 = 81 days charged). Accordingly, 81 days are chargeable to the People, and their sixty-day speedy trial period has elapsed.

CONCLUSION
Upon review and consideration of the submissions, court file and relevant legal authority, Defendant's motion to dismiss pursuant to CPL §§ 245.50[4][c], 170.30[1][e], and 30.30 is GRANTED.
This constitutes the opinion, decision, and the order of the Court.
Dated: May 16, 2025
Bronx, New York
Hon. Deidra R. Moore, J.C.C.

Footnotes

Footnote 1:Defense counsel also notes that the "pre-arraignment notification form" was not disclosed before the COC was filed and remains outstanding (Defense Motion at 5). The prosecution contends that this document is not generated by the NYPD or another law enforcement agency and is therefore not discoverable (People's Affirmation at 15). In their reply papers, the defense attaches a sample pre-arraignment notification form which appears to bear the NYPD logo (Defense Ex.2). The form contains information about the subject's arraignment and may bear the NYPD seal because NYPD has jurisdiction of defendants in custody waiting to be arraigned. As Mr. DeJesus Reyes was given a Desk Appearance Ticket and not required to remain in custody until arraignment, it is unclear if this form would have been generated in this case.

Footnote 2:Regarding the last Bay factor—how obvious missing discovery would be to a prosecutor exercising due diligence—the Court cannot draw any conclusions. A prosecutor reviewing their own discovery prior to disclosure would likely notice that their most recent CCRB Officer History was dated fifteen months prior. However, without more information about the flow of information between the CCRB, the Bronx D.A.'s Giglio Unit, and individual assistant district attorneys, the Court lacks the information necessary to properly assess this factor.